Crucible Steel Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Roy B. Bailey, Respondents.

Argued April 6, 1981, before Judges Rogers, Williams, Jr. and Palladino, sitting as a panel of three.

*Roy F. Walters, Jr., Fried, Kane, Walters & Zuschlag,* for petitioner.

*Benjamin L. Costello,* with him *Kenneth J. Yablonski, Yablonski, King, Costello & Leckie,* for respondent, Roy B. Bailey.

Opinion by Judge Rogers, May 6, 1981:

Crucible Steel Corporation (Crucible) has appealed from an order of the Workmen's Compensation Appeal Board affirming a referee's decision awarding Roy Bailey workmen's compensation benefits for total disability due to a work-related occupational disease pursuant to Section 301(c)(2) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §411(2). We affirm.

Bailey was employed for thirty-five years by Crucible or its predecessors. During this time Bailey

worked as a pickle line helper, a slabyard crane man, a blooming mill crane man, a stripper crane man and a soaking pit crane man and, throughout his employment, Bailey was exposed to dust from flint and silica and fumes from acid. Bailey ceased work on March 14, 1977, due to a severe shortness of breath. He thereafter filed a petition for workmen's compensation benefits for total, or in the alternative partial, disability due to an occupational disease as defined in Section 108(n) of the Act, 77 P.S. §27.1(n).[1] Upon Crucible's denial of all the material allegations contained in Bailey's petition, several referee's hearings were held. The evidence adduced at these hearings consisted of the testimony of Bailey and the depositions and medical reports of Dr. J. D. Silverman, Bailey's examining physician, and Dr. Claus L. Anderson, who examined Bailey at Crucible's request. The following findings of fact of the referee provide a comprehensive summary of the two doctors' testimony, as well as the referee's consideration of this testimony:

10. On February 22, 1978 the claimant was examined by Dr. J. D. Silverman, specialist in pulmonary diseases and the claimant's examining physician. X-rays of the claimant's

---

[1] The term 'occupational disease,' as used in this act, shall mean only the following diseases.

. . . .

(n) All other diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are causally related to the industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population. For purposes of this clause, partial loss of hearing in one or both ears due to noise; and diseases silicosis, anthracosilicosis and coal workers' pneumoconiosis, resulting from employment in and around a coal mine shall not be considered occupational diseases.

chest were interpreted as revealing pneumo-
coniosis; category 1/1, type P and S, both lungs
(six zones). Pulmonary function studies re-
vealed both restrictive of obstructive disease.
The doctor, based on the history, his clinical
examination, the x-rays and pulmonary func-
tion study results, made diagnosis of mixed
dust pneumoconiosis and silicosis with pulmon-
ary emphysema and chronic asthmatic bron-
chitis as complications of the aforementioned
primary diseases.

11. It was further the opinion of Dr. Silver-
man that the claimant was totally and per-
manently disabled as a result of the aforemen-
tioned occupational diseases which had occurred
as a result of his total and cumulative ex-
posure to dust both while working in the flint
and steel mills. That the claimant's occupa-
tional diseases were all causally related to his
employment and that the incidence was sub-
stantially greater in his occupations than in the
general population.

12. It was finally the opinion of Dr. Silver-
man that although the claimant's smoking
habit[2] may have aggravated the occupational
diseases, that in the absence of his smoking
habit and his musculoskeletal problems, the
occupational diseases in and of themselves
would render him totally and permanently dis-
abled.

13. On August 16, 1978 the claimant was ex-
amined by Dr. Claus L. Anderson, specialist
in pulmonary diseases and the defendant's ex-

---

[2] Bailey smoked approximately one pack of cigarettes a day
for thirty-five to forty years. In 1977, Bailey reduced his cigarette
consumption to four cigarettes a day.

amining physician. X-rays of the chest revealed a few small calcific nodules in the right lower lung field, elsewhere the lung fields were clear. The doctor found no evidence of pneumoconiosis and classified the x-ray as 0/0. Pulmonary function studies revealed evidence of a mild restrictive and obstructive defect. The doctor based on the history, clinical examination, x-ray and pulmonary function study results, made diagnosis of chronic bronchitis and chronic obstructive lung disease which resulted from his extensive cigarette smoking habit and which impaired him from a respiratory standpoint at a percentage of 35% to 40%. It was the doctor's opinion that he could return to his former occupation as a crane operator.

14. It was further Dr. Anderson's opinion that there was no increased incidence of chronic bronchitis or pneumoconiosis in the claimant's occupation. Nor did said occupation constitute an occupational disease hazard.

15. In resolving the conflicting medical testimony and opinions your Referee finds the testimony and opinion of Dr. Silverman to be both competent and credible and will rely on it, in part, in arriving at a final determination in this case.

16. On February 22, 1978 the claimant became totally and permanently disabled due to mixed dust pneumoconiosis and silicosis with complications of pulmonary emphysema and chronic asthmatic bronchitis resulting from said diseases which resulted from his total and cumulative exposure to dusts during all of his employment in the industries in which he was employed.

17. Your Referee further finds that the claimant was exposed to the hazard of the aforementioned diseases by reason of his employment, that said diseases were causally related to the industries in which he was employed and that the incident of said diseases were substantially greater in said industries than in the general population.

The referee concluded that Bailey had sustained his burden of proving that he suffered an injury due to an occupational disease within the meaning of Sections 108(n) and 301(c)(2) of the Act. Accordingly, the referee awarded Bailey benefits for total disability. The Board, without taking additional evidence affirmed the referee's decision.

Crucible does not contest the referee's finding that Bailey's "mixed dust pneumoconiosis and silicosis with complications of pulmonary emphysema and chronic asthmatic bronchitis" is an occupational disease as defined by Section 108(n) of the Act, 77 P.S. §27.1(n). Rather, Crucible contends that there is not substantial evidence in the record to support the referee's finding that Bailey's disability resulted from this occupational disease. We disagree.

A claimant seeking benefits for an injury occasioned by an occupational disease has the burden of proving that his or her disability resulted from the occupational disease. Section 301(c)(2) of the Act, 77 P.S. §411(2). The unequivocal testimony of Dr. Silverman supports the referee's findings that Bailey suffered an occupational disease and that his disability resulted directly from the occupational disease. Moreover, Dr. Silverman, while acknowledging that Bailey's condition may have been aggravated by his smoking and some back problems, testified that even if Bailey did not have these other problems, the occupational disease suffered by Bailey would in and

of itself have resulted in his total and permanent disability. Thus, Bailey did sustain his burden of proof.

In essence, Crucible is complaining that the referee should have accepted the testimony of its expert, Dr. Anderson, rather than the testimony of Dr. Silverman. However, it is the function of the referee, as factfinder, to choose between the conflicting medical evidence. *See, e.g. City of Scranton Fire Department v. Workmen's Compensation Appeal Board*, 43 Pa. Commonwealth Ct. 151, 154, 401 A.2d 889, 892 (1979).

Order affirmed; an appropriate judgment order will be entered.

### ORDER

AND Now, this 6th day of May, 1981, the order of the Workmen's Compensation Appeal Board, dated January 10, 1980, is affirmed and it is ordered that judgment be entered in favor of the claimant, Roy Bailey, and against the petitioner, Crucible Steel Corporation, self-insured, in the amount of $199.00 per week commencing on May 17, 1978, and continuing into the future in accordance with the provisions of The Pennsylvania Workmen's Compensation Act. All deferred compensation payments shall bear interest at the rate of ten percent per annum.

The petitioner is ordered to reimburse counsel for the claimant, Kenneth J. Yablonski, Esquire, for reasonable costs in the amount of $336.00. Counsel of the claimant is hereby awarded reasonable attorney fees in the amount of $4,746.15 and the petitioner is directed to deduct $29.85 from each week of compensation that becomes due and payable to the claimant beginning May 17, 1978, and continuing for 159 weeks and to pay this amount directly to counsel for the claimant. All remaining payments of compensation and interest, and all payments due and payable after the expiration of 159 weeks from May 17, 1978, shall

be paid by the petitioner directly to the claimant by bank draft in the name of the claimant only and mailed directly to the claimant by first class mail.